IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 29, 2020

## DARRELL A. COOPER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No.111252      G. Scott Green, Judge**

_____

### No. E2019-02132-CCA-R3-PC
_____

The Petitioner, Darrell A. Cooper, appeals from the Knox County Criminal Court's denial of his petition for post-conviction relief from his 2016 convictions for two counts of aggravated robbery, two counts of aggravated kidnapping, and one count of possession of a firearm while being a convicted felon, for which he is serving a twenty-year sentence. The Petitioner contends that he received the ineffective assistance of counsel, rendering his guilty pleas involuntary. We remand the case to the post-conviction court for the entry of an order setting forth findings of facts and conclusions of law in compliance with Tennessee Code Annotated section 40-30-111(b) (2018).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Darrell A. Cooper.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Ashley McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arises from the armed robbery of a convenience store. At the October 26, 2016 guilty plea hearing, the State's recitation of the facts was as follows:

> . . . [On] December 6th, 2014 at about 9:50 in the evening officers responded to a report of a robbery at . . . the Breadbox . . . Shell gas station. On that day [the Defendant and Benny Cooper, the Defendant's cousin] . . .

entered that open business armed with handguns. They also had their faces covered . . . in an attempt to disguise their identity. While inside they brandished handguns, demanded money from the employee, . . . Bessie Bush. Received a quantity of money from the cash register in response to those demands.

While this was going on the two victims set out in the aggravated kidnapping counts and the one in the aggravated robbery count, . . . Jesus Basara and Candeto Vargas, had entered that business, a weapon was drawn on them. They were ordered to lie face down on the floor of that business. Told they would be shot if they didn't comply.

Mr. Candeto Vargas while he was on the ground at gunpoint, these defendants acting in concert, went through his pants and retrieved his wallet which had IDs and other documents important to him, although no money. And . . . after having both of those individuals lying on the ground they left the business, got into an awaiting vehicle driven by the other codefendant in this case [and Benny Cooper's daughter], Jessica Vanhuss.[1]

The witnesses were able to get a tag number and immediately called the police and a description of the vehicle was broadcast. Officers were able to very quickly locate this vehicle and made a traffic stop. These two defendants were in the car along with the third codefendant.

They also found in the car the wallet taken from Mr. Vargas, which was later returned to him. Also found within the car actually on the person of Ms. Vanhuss was the quantity of money taken from the Breadbox Shell station, which was returned also to the store.

They were also driving -- or in a motor vehicle where a license plate from another vehicle had been stolen and placed onto that vehicle that contained Alaska tags. All of these events did take place here in Knox County.

At the time of the guilty plea hearing, the Petitioner was fifty-six years old and had completed the sixth grade. He told the trial court that he could read "a little bit." Defense counsel informed the court that he and the Petitioner had reviewed the guilty plea forms and had discussed the Petitioner's rights. Counsel said that, in his judgment, the Petitioner understood "everything that was read to him." The Petitioner told the court that he

---

[1] The record reflects that codefendant Vanhuss was prepared to testify against the Petitioner and codefendant Cooper and that she would receive "a very favorable outcome" in exchange for her cooperation pursuant to a plea agreement. Other evidence shows that after the Petitioner and codefendant Cooper pleaded guilty, the charges against codefendant Vanhuss were dismissed.

understood the documents, that he did not have any questions, and that he understood the proceedings. The Petitioner said that he had not taken prescription medications and that he had not been forced, pressured, or threatened to plead guilty. He told the trial court that after discussing his case with defense counsel, he had decided to plead guilty.

The trial court referred to the guilty plea documents and asked the Petitioner if the documents had been read to him. The Petitioner responded that the documents had been read to him, that he and defense counsel had discussed them, that he signed them, that he understood the constitutional rights explained in them, and that he did not have questions about his rights. The court reviewed the Petitioner's constitutional rights to a jury trial, to confront witnesses, to subpoena witnesses, to cross-examine witnesses, to present favorable witnesses, to an attorney, to remain silent, to testify at a trial, and to an appeal. The Petitioner stated that he understood these rights. The Petitioner, likewise, stated that he was satisfied with defense counsel's services.

The trial court found that the Petitioner was competent to enter his guilty pleas, was pleading guilty "of his own free will and volition," and was knowingly and voluntarily waiving his constitutional rights in order to plead guilty. The court asked the Petitioner if he had any questions, and the Petitioner responded, "No, sir." The Petitioner pleaded guilty to two counts of aggravated robbery, two counts of aggravated kidnapping, and one count of being a felon in possession of a firearm. Pursuant to the plea agreement, he received concurrent sentences, for an effective twenty-year sentence.

On August 21, 2017, the Petitioner filed a post-conviction petition, alleging, in relevant part, that he received the ineffective assistance of counsel, rendering his guilty pleas unknowing and involuntary. He asserted that counsel failed to investigate his case and that counsel provided "erroneous" advice relative to whether the aggravated kidnappings were incidental to accomplishing the aggravated robberies. *See State v. White*, 362 S.W.3d 559 (Tenn. 2012). He argued that if counsel had investigated and had advised him accurately regarding the aggravated kidnapping convictions, he would not have pleaded guilty.

At the September 13, 2019 post-conviction hearing, the Petitioner testified that the discovery materials he reviewed did not reflect that he possessed a firearm at the time of his arrest. He said that he and defense counsel reviewed the discovery materials, which included a video recording containing "something" from the defense investigator, but that he did not have his glasses and could not see well because the police had broken his glasses. The Petitioner said that he told counsel he could not see and that counsel "went on to something else" without describing the contents of the recording. The Petitioner said that counsel provided the defense's discovery motion but that counsel did not provide him with the State's response.

-3-

The Petitioner testified that defense counsel and the defense investigator spoke to him about the twenty-year plea offer and that they thought it was in the Petitioner's best interest to accept the offer and to plead guilty. The Petitioner said counsel advised that consecutive sentences would have been ordered and that he would have received at least ninety years' confinement if he did not plead guilty. When asked if he knew what he was doing by pleading guilty, the Petitioner said, "Well, at the time I didn't know that . . . the kidnapping was an illegal charge and . . . I didn't know that part." When asked if defense counsel discussed *White* in connection with the kidnapping charges, the Petitioner said that "everything I asked him he never came back with an answer. He never came back and said I investigated this . . . . He . . . always would come with something different [than] what I would ask." When asked again if the Petitioner and counsel had discussed *White*, the Petitioner said counsel stated he would never be released from prison if he chose a trial.

The Petitioner testified that he was not initially charged with aggravated kidnapping and that he was charged with aggravated kidnapping after he had been in jail for one year. The Petitioner denied that defense counsel ever told him that, in order to support the kidnapping charges, the State would have to prove the detention of the victims inside the convenience store was not incidental to accomplishing the robberies. The Petitioner said that counsel advised the Petitioner would be convicted of all the charges at a trial and that the Petitioner did not learn about *White* until he arrived at the penitentiary. The Petitioner said that after discussing *White* with post-conviction counsel, the Petitioner believed his aggravated kidnapping convictions were illegal and that he should not have been convicted of these offenses. He said that he would not have pleaded guilty if he had known about *White*.

On cross-examination, the Petitioner testified that he had previously pleaded guilty to theft by shoplifting, aggravated assault, robbery, larceny, burglary, and escape. He agreed that he was familiar with the criminal justice system. He agreed that he understood the guilty plea proceedings in the present case, the offenses to which he pleaded guilty, the sentence length, and his constitutional rights. He maintained, though, that he was unaware of *White* at the time he entered his guilty pleas. He agreed concurrent service of his sentences was an important aspect of the plea agreement.

The Petitioner testified that he did not rob and kidnap anyone inside the convenience store. He said that he and codefendant Cooper were across the street from the store, that he was never at the store, and that he did not participate in the offenses. He said that "at the time, I couldn't defend myself. I couldn't say, no, I didn't do a robbery . . . . Because we were going to the penitentiary together and [codefendant Cooper's] daughter was involved." The Petitioner later said that he got in the car with his codefendants outside of his apartment, which was across the street from the store, and that they were going to the Petitioner's sister's home. The Petitioner said his codefendants did not mention having committed a robbery. The Petitioner said that he provided this information to defense counsel but that counsel said the Petitioner could not "win" after the superseding

indictment contained twenty charges. The Petitioner stated counsel advised that the plea offer required the Petitioner and codefendant Cooper to plead guilty.

The Petitioner testified that he and defense counsel reviewed the defense's request for discovery materials and the file compiled by the defense investigator. The Petitioner said, though, that he did not learn the contents of the investigator's file until he arrived at the penitentiary. He said that he could not read well and that he did not ask anyone to read the contents of the file to him. He said that when counsel gave him the motion and the investigator's file, counsel said that the defense had "a lot of witnesses." The Petitioner did not recall the anticipated testimony of the witnesses. The Petitioner said that counsel played a recording for him but that he could not see without his glasses and that counsel turned off the recording. The Petitioner recalled that the recording was related to "something" found by the investigator. The Petitioner said, though, that he did not know what was found because he and counsel did not "discuss it." Relative to the State's evidence, the Petitioner said that he only knew he was "pulled over in the car" with codefendants Cooper and Vanhuss. The Petitioner denied knowing any of the witnesses' names and the contents of their police statements.

Upon questioning by the post-conviction court about the Petitioner's reasons for accepting a twenty-year sentence for something the Petitioner claimed he did not do, the Petitioner said that "it was a real messed up time," that codefendant Cooper had been released recently from prison, and that the Petitioner could not "throw him under the bus." The Petitioner said that he "had to do whatever" codefendant Cooper "wanted . . . because we were going to the same penitentiary." The Petitioner said that if codefendant Cooper thought the Petitioner "got his daughter messed up," codefendant Cooper would have killed the Petitioner. He said, "Cousin or not. He would have killed me." The Petitioner said that he provided this information to defense counsel and that counsel said "nothing."

The Petitioner testified that twenty years was "too much" time, although he agreed he received concurrent sentences. He said that the sentencing range should not have been "that high" and that the kidnapping charges "made the range higher." The post-conviction court interjected and explained that Range II sentences for aggravated robbery and aggravated kidnapping were twelve to twenty years. The Petitioner stated that he should not have been convicted of the firearm violation because he did not possess a firearm. The court explained that the proof would have been sufficient for the firearm violation based upon witness testimony that two men entered a convenience store and that at least one man held a firearm during a robbery.

The Petitioner testified that his kidnapping convictions resulted in an illegal sentence. The post-conviction court asked the Petitioner if he would be satisfied with the outcome of the case if the "kidnapping conviction goes away," and the Petitioner responded, "No." The Petitioner explained that if the kidnappings and firearm violation were not involved, he would have received a sentence of less than twenty years.

-5-

The Petitioner testified that defense counsel did not tell him that the witnesses inside the convenience store identified the Petitioner as a participant in the robbery. The Petitioner denied that he gave codefendant Vanhuss $91 taken from the store to hide in her bra. The Petitioner said codefendant Vanhuss lied in her written statement by claiming that the Petitioner told her to drive him to the store and that he switched the license plates in the parking lot. The Petitioner agreed that he refused to talk to the police. When asked if he were requesting the post-conviction court "to make it so that you're only guilty of robbery and not guilty of kidnapping," the Petitioner responded, "No. I'm saying I'm not guilty of nothing." The Petitioner said that he felt as though he had been forced into an "illegal plea bargain," that he had been scared, and that counsel had advised he would be convicted of everything at a trial.

Defense counsel testified that, consistent with his regular practice, he obtained the discovery materials from the prosecutor and that he discussed the materials with the prosecutor to ensure the defense had all of the materials and to determine whether a plea offer had been extended before counsel began his representation in criminal court. Counsel thought an offer had been extended before the indictment was returned. Counsel said that the State extended a sixteen-year offer but that the State "threatened" to obtain a superseding indictment if the Petitioner did not accept the offer. Counsel said that the offer was rejected because it required all three defendants to plead guilty and that counsel could not recall if the Petitioner or the codefendants rejected it. Counsel said that after the superseding indictment was obtained, the State extended a twenty-year offer with concurrent service of the sentences.

Counsel testified that he hired an investigator in the Petitioner's case and that the primary evidence was a video recording from the convenience store, which counsel said "showed the entire event," along with police cruiser dash camera recordings. Counsel said that he and the Petitioner watched the store recording but that the Petitioner had difficulty watching it because of vision issues. Counsel said he explained the contents of the recording to the Petitioner. Counsel said that, initially, the defense would have focused, in part, on identity because the perpetrators wore masks but that one codefendant confessed and "pointed the fingers at everybody else." Counsel determined that challenging the identity would have been difficult after the confession and that the only remaining defense was to blame others. Counsel recalled that the people who had been outside the store during the robbery followed the vehicle in which the Petitioner and the codefendants fled the scene.

The post-conviction court inquired about whether any evidence showed that the codefendants picked up the Petitioner after the robbery. Counsel stated that the 9-1-1 calls from the people chasing the Petitioner and the codefendants were "pretty contemporaneous" and that "there was no break in the . . . chase."

Counsel testified that he advised the Petitioner about codefendant Vanhuss's police statement, the contents of the video recordings, and the superseding indictment. Counsel did not recall discussing whether the State "could charge" aggravated kidnapping in this case. Counsel said, though, that at the time of the guilty pleas in 2016, "the *White* case was . . . still kind of up in the air." Counsel said that there could have been an appellate issue relative to *White* but that "there was not really a leg to stand on with regards to . . . the count prior to trial."

Counsel testified that although he could not recall specifically what he told the Petitioner, his usual practice was to explain to a client the possible penalties for each charged offense and what the client's sentence might be after a trial. Counsel said that he advised the client about the likelihood of winning at a trial and that he was honest with the client because the client had to decide whether to plead guilty or choose a trial. Counsel said, though, that he told the Petitioner the offer was "absolutely better than going to trial." Counsel said that the Petitioner faced a significant sentence if convicted at a trial and noted that consecutive service could have been ordered because the offenses involved three victims. Counsel said that he did not force the Petitioner to plead guilty and that counsel made clear he would do as the Petitioner wished.

Counsel testified that he read the guilty plea forms to the Petitioner and that the Petitioner understood the terms of the agreement and the rights he waived by pleading guilty. Counsel said that afterward, the Petitioner signed the forms.

The post-conviction court asked post-conviction counsel if the aggravated kidnapping convictions were the post-conviction issue. The court asked counsel, "[H]ypothetically, if the kidnapping convictions went away, that completely eliminates this issue?" Counsel responded, "Yes, your Honor." The court and counsel agreed that the kidnapping convictions did not "impact the viability" of the Petitioner's guilty pleas to aggravated robbery and the firearm violation. The court stated, and counsel agreed, that *White* was grounded in double jeopardy principles and that, generally, "any defendant can waive a constitutional right," as long as a defendant enters a knowing and voluntary guilty plea.

The post-conviction court instructed the State to provide the facts of the case that would have warranted a *White* jury instruction in connection with the kidnapping charges if the Petitioner's case had gone to trial. The prosecutor stated that the robbery was occurring before the two men walked inside the convenience store and were forced on the ground. The prosecutor said that one of the aggravated kidnapping victims was not an aggravated robbery victim because the man was only being held at gunpoint while the other two victims were robbed. The prosecutor stated that during the robbery at the front counter of the store, the two men walked inside and were ordered to lie on the ground. The prosecutor argued that as a result, the aggravated kidnappings were not incidental to "the robbery." The prosecutor did not specify which robbery. The prosecutor agreed with the

court and post-conviction counsel that if the aggravated kidnapping charges "go away," there was "absolutely no issue . . . left with the validity of the aggravated robbery convictions." The prosecutor stated that she had not reviewed the video recording from the store recently and that she did not know if the robbery of the store employee had ended and if the Petitioner and codefendant Cooper were getting ready to leave the store when the two men entered the store. The prosecutor also did not know where the Petitioner and codefendant Cooper were when the two men entered the store. The prosecutor said, though, that the timing was important.

The post-conviction court took the matter under advisement and entered a written order following the evidentiary hearing. In its order, the court did not address the Petitioner's allegations that his guilty pleas were involuntary because counsel provided ineffective assistance by failing to investigate the case and by failing to advise him properly pursuant to *White* with respect to his aggravated kidnapping convictions. The court's determinations focused on the Petitioner's testimony of innocence. The court's order reflects the following:

> [The Petitioner's] current exculpatory rendition of the facts is simply not credible. The stipulated and credible evidence reveals that two masked men entered the Breadbox and confined, not only the store clerk(s), but two patrons who entered the store, and thereafter, perpetrated robberies at gunpoint of multiple victims. As the robbers fled the scene a citizen followed the vehicle until the robbers were apprehended by law enforcement. Within the vehicle were the [P]etitioner, his cousin Benny Cooper, and his niece as well as property stolen during the robberies at the Breadbox. The Petitioner's niece cooperated and was prepared to testify against him. In short, the proof of the petitioner's guilt is overwhelming.

> This Court undertakes a lengthy colloquy each and every time a defendant enters a plea of guilt, which includes an acknowledgment by an accused person of each right he/she is waiving when entering a plea of guilt. Moreover, October 16, 2016 was not the first time this petitioner entered a plea of guilt. There exists no hesitation . . . that this Petitioner knew what he was doing, and that he made a conscious, knowing, voluntary, and intelligent choice to plead guilty. This Court accredits the testimony of trial counsel and there exists no credible evidence within this record that the petitioner received ineffective assistance, nor that he suffered any prejudice as a consequence of any action (or inaction) of his trial counsel.

On appeal, the Petitioner contends that the post-conviction court erred by denying relief because he received the ineffective assistance of counsel. The Petitioner asserts that counsel failed to provide him with the State's discovery materials and failed to inform him whether the aggravated kidnapping convictions were permitted pursuant to *White*. The

Petitioner argues that counsel's ineffective assistance rendered his guilty pleas involuntary. The State responds that the post-conviction court did not err by denying relief.

Tennessee Code Annotated section 40-30-111(b) states that a post-conviction court "shall enter a final order, and . . . shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each ground." A post-conviction court's failure to make specific findings in the written order does not automatically result in the reversal of the post-conviction court's judgment. *State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984); *see George v. State*, 533 S.W.2d 322 (Tenn. Crim. App. 1975). The intent of the General Assembly underlying the written order requirement "is to aid in appellate review; thus, the failure to meet the requirement does not require reversal where the record is sufficient to effectuate a meaningful appellate review." *George Scott Mason* v. *State*, No. M2013-01170-CCA-R3-PC, 2014 WL 1657681 at *4 (Tenn. Crim. App. April 23, 2014); *see Swanson*, 680 S.W.2d at 489. If a post-conviction court makes adequate findings on the record, then the failure to include such findings in the written order may be harmless error. *Id*.

The record reflects that although a lengthy discussion occurred at the post-conviction hearing about whether *White* prevented the Petitioner's aggravated kidnapping convictions, the post-conviction court's written order denying relief only addressed the Petitioner's testimony of actual innocence. Likewise, the order does not contain findings of fact and conclusions of law for the Petitioner's allegations for relief, and the court did not make any findings of fact and conclusions of law on the record at the evidentiary hearing. Therefore, the post-conviction court failed to comply with its statutory duty to enter an order setting forth its findings of fact and conclusions of law with respect to each allegation raised by the Petitioner. *See* T.C.A. § 30-30-111(b). Furthermore, we conclude that absence of findings of fact and conclusions as to all issues prevents this court from discharging its duties of appellate review. The Petitioner's allegations, most notably that his guilty pleas were involuntary because defense counsel failed to advise him of whether *White* prevented dual convictions for aggravated robbery and aggravated kidnapping, are fact intensive inquiries, and the court failed to make any factual findings. We note that although our supreme court released *White* in 2012, defense counsel testified at the post-conviction hearing that he did not recall discussing whether the State "could charge" aggravated kidnapping and that at the time of the guilty pleas in 2016, "the *White* case was . . . still kind of up in the air."

Therefore, because the post-conviction court failed to make any findings of fact and conclusions of law with respect to the issues raised in the petition, we remand this case to the court for the entry of an order setting forth the required findings of fact and conclusions of law as to each of the Petitioner's allegations.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

-9-